**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Andruw Adrian Perez Majano,<br>Petitioner,<br>v.<br>Eric Rokosky, et al.,<br>Respondents. | No. CV-26-05535-PHX-JZB<br>**ORDER** |

Pending before the Court is Petitioner's "Petition for a Writ of Habeas Corpus by a Person in Immigration Custody." (Doc. 1.) Respondents have filed a timely Response to the instant Petition. (Doc. 7.) Upon review of these filings, the Court finds a reply unnecessary. Because Petitioner's detention without a pre-deprivation hearing violates the Due Process Clause of the Fifth Amendment, the Court shall grant Petitioner's Petition.

## I. Background.

Petitioner is a native and citizen of Venezuela. (Doc. 7 at 1.) On October 25, 2023, Petitioner presented himself at U.S. port of entry (*Id.*) On that date, Petitioner was issued a Notice to Appear that charged him as inadmissible under Immigration and Nationality Act ("INA") § 212(a)(7)(A)(i)(I)—codified at 8 U.S.C. § 1182(a)(7)(A)(i)(I). (Doc. 7-1 at 2, 5.)

Petitioner was then released on humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5). (Doc. 7-2 at 4.) Petitioner's parole expired on October 10, 2025. (*Id.*) On June 2, 2026, Petitioner was detained by Immigration and Customs Enforcement ("ICE")

officers. (Doc. 7 at 2.) On June 24, 2026, an Immigration Judge ("IJ") ordered Petitioner to be removed. (*Id.*) Petitioner appealed that order to the Board of Immigration Appeals ("BIA"). (*Id.*) Petitioner has remained in U.S. Department and Homeland Security ("DHS") custody since June 2, 2026. (*Id.*)

On August 10, 2026, Petitioner filed his Petition. (Doc. 1.) In his Petition, Petitioner asserted four claims for relief: (1) continued detention violates the Due Process Clause of the Fifth Amendment; (2) his re-detention violates the Fifth Amendment; (3) detention without a bond hearing violates the Due Process Clause of the Fifth Amendment; and (4) his current detention is arbitrary. (*Id.* at 9–12.) On August 18, 2026, Respondents filed their Response. (Doc. 7.)

Because the Court finds that Respondents' failure to provide a pre-deprivation hearing necessitates relief in this action, the Court shall solely address this argument.

## II. 28 U.S.C. § 2241 Writ of Habeas Corpus.

The district court is empowered to issue a writ of habeas corpus where an individual is held "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). The language of § 2241 and "the common-law history of the writ" makes clear "that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (noting that the writ of habeas corpus "was early recognized by [the Supreme] Court as a 'great constitutional privilege'") (quoting *Ex parte Bollman*, 8 U.S. (4 Cranch) 75, 95 (1807)); *cf. In re Kaine*, 55 U.S. (14 How.) 103 (1852) (applying the writ of habeas corpus in the immigration context). The Supreme Court has made clear that § 2241 applies to noncitizens[1] challenging

[1] Undersigned shall use the term 'noncitizen' unless a quoted statute or court decision uses the term 'alien.' This usage is congruent with the Ninth Circuit Court of Appeals' precedent, such as *Avilez v. Garland*, which specifically stated:

> This opinion uses the term noncitizen unless quoting language from the immigration statutes or past opinions containing the term alien. There are two reasons behind this choice. First, use of the term noncitizen has become a common practice of the Supreme Court[.] Second, even if that were not the case, careful writers avoid language that reasonable readers might find offensive or distracting—unless the biased language is central to the meaning of the writing. The word alien can suggest "strange," "different,"

their immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Because Petitioner only challenges his prolonged civil detention, the Court has jurisdiction to address the instant Petition. *See Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) ("[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of the removal order[.]").

## III. DISCUSSION.

The Due Process Clause protects all persons within the United States from being "deprived of life, liberty, or property, without due process of law." U.S. CONST. Amend. V. It is well established that the Due Process Clause applies to noncitizens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). The Court's due process analysis is separated into two steps: "[F]irst[, the Court] ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so[, the Court] ask[s] whether the procedures followed by the [government] were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).

### A. Statutory Classification and Corresponding Liberty Interest.

"A noncitizen's place within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Avilez v. Garland*, 69 F.4th 525, 529 (9th Cir. 2023) (cleaned up). Here, Respondents assert that "Petitioner is properly detained under Section 1225(b)(2)(A)[.]" (Doc. 7 at 3.) The Court agrees.

Here, Petitioner was granted humanitarian parole under 8 U.S.C. § 1182(d)(5). *See* (doc. 7-2 at 4.) Because Petitioner was released upon humanitarian parole, his detention is properly classified under 8 U.S.C. § 1225(b)(2). *Mohammadi v. Noem*, No. 2:26-cv-00032-GMN-EJY, 2026 U.S. Dist. LEXIS 27013, at *6 (D. Nev. Feb. 9, 2026) (noting that a

---

> "repugnant," "hostile," and "opposed," . . . while the word noncitizen, which is synonymous, . . . avoids such connotations. Thus, noncitizen seems the better choice.

*Avilez v. Garland*, 69 F.4th 525, 527 n.1 (9th Cir. 2023) (cleaned up).

petitioner released upon 8 U.S.C. § 1182(d)(5) remains classified "under § 1225(b)(2), not § 1226(a)"); *Musaev v. Hermosillo*, No. 2:26-cv-00522-RAJ, 2026 U.S. Dist. LEXIS 75938, at *9–10 (W.D. Wash. Apr. 6, 2026) (finding that a noncitizen detained pursuant to 8 U.S.C. § 1225(b) and released upon 8 U.S.C. § 1182(d)(5) humanitarian parole is "subject to Section 1225(b)'s mandatory detention scheme upon the termination of his parole").

Although Petitioner's detention may be properly categorized under 8 U.S.C. § 1225(b)(2), this finding "'does not obviate Respondents' obligation to comply with due process' in re-detaining Petitioner." *Musaev*, 2026 U.S. Dist. LEXIS 75938, at *10 (quoting *Telenchana v. Hermosillo*, No. 2:26-cv-00363-GJL, 2026 U.S. Dist. LEXIS 51425, at *29 (W.D. Wash. Mar. 12, 2026)). Rather, recent case law confirms that an immigration detainee released on parole retains a liberty interest in his release. That is, a "liberty interest [does] not expire along with his parole." *Serrano v. Bondi*, No. CV-26-00110-PHX-DJH (CDB), 2026 U.S. Dist. LEXIS 114443, at *6 (D. Ariz. Mar. 7, 2026) (quoting *Omer G.G. v. Kaiser*, 815 F. Supp. 3d 1098, 1109 (E.D. Cal. 2025)); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025) ("Once established, Petitioner's interest in liberty is a constitutional right which may only be revoked through methods that comport with due process, such as a hearing in front of a neutral party to determine whether Petitioner's re-detainment is warranted . . . . That the express terms of the [§ 1182] parole notice allowed for discretionary termination or expiration does not somehow obviate the need for the Government to provide a[n] individualized bond hearing prior to re-detaining the parolee."); *Mody v. Warden*, No. 25-cv-03400-FMO, 2026 U.S. Dist. LEXIS 5820, at *20–21 (C.D. Cal. Jan. 5, 2026) (issuing temporary restraining order where petitioner had been re-detained following expiration of his § 1182 parole); *Quiroga-Chaparro v. Warden of the Golden State Annex Detention Fac.*, No. 25-cv-01731-AC, 2025 U.S. Dist. LEXIS 268580, at *15–16 (E.D. Cal. Dec. 31, 2025) (same); *Ramirez v. Wamsley*, No. 2:25-cv-01723-KKE-TLF, 2025 U.S. Dist. LEXIS 231958, at *9 (W.D. Wash. Nov. 25, 2025) (directing immigration detainee's immediate release after he was re-detained following his parole's expiration, stating petitioner's "interest in his freedom is

constitutionally protected" and that "the Government exercises discretion in determining whether to grant parole or extend it upon its expiration does not eliminate the protections afforded to Petitioner's liberty interest"). The applicable regulations also provide if a non-citizen is re-detained after § 1182 parole expires, they "shall again be released on parole" if their "exclusion, deportation, or removal order cannot be executed within a reasonable time." 8 C.F.R. § 212.5(e)(2)(i); *D.L.C. v. Wofford*, No. 1:25-cv-01996-DC-JDP (HC), 2026 U.S. Dist. LEXIS 10287, at *9 (E.D. Cal. Jan. 20, 2026) ("Indeed, the applicable regulations state that if a non-citizen is re-detained after § 1182 parole expires, they shall again be released on parole if their exclusion, deportation, or removal order cannot be executed within a reasonable time.") (citation omitted).

For the foregoing reasons, Petitioner, upon being granted humanitarian parole, gained a liberty interest in release-analogous procedural rights, regardless of whether his humanitarian parole is or is not expired.

Furthermore, because Petitioner is seeking release from unconstitutional civil confinement, not admissions, his action is not barred by the entry fiction doctrine. The entry fiction doctrine asserted by Respondents is based upon the "distinction between those aliens who have come to our shores seeking admission, such as petitioner, and those who are within the United States after an entry, irrespective of its legality." *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958). The Supreme Court has noted that the latter category of noncitizens have "additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" *Id.* (quoting *Shaughnessy v. U.S. ex rel. Mezei*, 345 U.S. 206, 212 (1953)); *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned") (quoting *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950)). Those noncitizens who are on the "threshold of initial entry" are not considered "to have 'effected an entry[.]'" *Thuraissigiam*, 591 U.S. at 140 (quoting *Zadvydas*, 533 U.S. at 693). Put differently, "[w]hen an alien arrives at a port of entry—for example, an international airport—the alien is on U.S. soil, but the alien is

not considered to have entered the country[.]" *Thuraissigiam*, 591 U.S. at 139. Therefore, while a noncitizen may be physically present within the country, they were "still in theory of law at the boundary line and had gained no foothold in the United States[.]" *Zadvydas*, 533 U.S. at 693 (quoting *Kaplan v. Tod*, 267 U.S. 228, 230 (1925)).

This distinction is predicated upon the following "fundamental proposition: '[t]he power to admit or exclude aliens is a sovereign prerogative.'" *Thuraissigiam*, 591 U.S. at 139 (cleaned up) (quoting *Landon v. Plasencia*, 459 U.S. 21, 32 (1982)). "The Constitution gives 'the political department of the government' plenary authority to decide which aliens to admit, . . . and a concomitant of that power is the power to set the procedures to be followed in determining whether an alien should be admitted." *Thuraissigiam*, 591 U.S. at 139 (quoting *Nishimura Ekiu v. United States*, 142 U.S. 651, 659 (1892)).

Respondents rely on the Supreme Court's *Mezei* and *Thuraissigiam* decisions to support their contention that noncitizens like Petitioner who are detained shortly after unlawful entry are treated as though they have not entered the United States and, as a consequence, are precluded from invoking any Due Process claims not expressly provided for in the INA. (Doc. 7 at 4.) Consequently, in Respondents' perspective, Petitioner is, at a minimum, without plenary Due Process protection. The Court finds that neither *Mezei* nor *Thuraissigiam* support Respondents' broad entry fiction claim.

Turning first to *Mezei*, the Court finds this decision factually and legally distinguishable from the instant action because *Mezei* narrowly "concern[ed] an alien immigrant permanently excluded from the United States on ***security grounds***." *Mezei*, 345 U.S. at 207 (emphasis added). *Mezei* dealt with a noncitizen who, based "on a finding that [his] entry would be ***prejudicial to the public interest for security reasons***," was detained "without a hearing before a board of special inquiry" on Ellis Island. *Id.* at 208 (emphasis added). Specifically, the government, pursuant to the Passport Act of 1918, decided to bar Mezei based on national security grounds, due, in part or whole in the majority's view, because he "simply left the United States and remained behind the Iron Curtain for 19

months."[2] *Id.* at 210–11, 214. Consequently, when his case reached the Supreme Court, Mezei "was for two years held a prisoner[3] on Ellis Island by order of the Attorney General." *Id.* at 217 (Black, J., dissenting).

It is with this backdrop that the Supreme Court held that Mezei's detention without the possibility of release on bond did not "deprive[] him of any statutory or constitutional right." *Id.* at 215. Situated within *Mezei*'s dicta, the Court noted that "an alien on the threshold of initial entry stands on a different footing: '[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.'" *Id.* at 212 (quoting *Knauff*, 338 U.S. at 544). While this announcement in *Mezei*'s dicta appears, on first glance, dispositive, it is, upon further inspection, narrowly limited to those situations where a noncitizen poses a national security risk. The first reason why this statement does not implicate all arriving noncitizens is because of the context of the case in which it was announced. As noted by Chief Justice Marshall, it is a:

> maxim[,] not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision.

*Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 399 (1821).

In both *Mezei* and *Knauff*—which *Mezei* relied upon in large part—the cases expressly addressed Due Process challenges asserted by noncitizens who posed a national security risk. *Mezei*, 345 U.S. at 207; *see also Knauff*, 338 U.S. at 539 ("May the United States exclude without hearing, solely upon a finding by the Attorney General that her

---

[2] In fact, the Court did not know the reasons why Mezei was excluded, as under the Passport Act of 1918, the Attorney General was not required to "disclose the evidence upon which that determination rests." *Id.* at 215. While the majority's reliance, in hindsight, is questionable considering that "[s]ecurity is like liberty in that many are the crimes committed in its name," *Knauff*, 338 U.S. at 551 (Jackson, J., dissenting), it nonetheless formed the basis upon which *Mezei* was decided.

[3] Mezei was 'free' to depart for other nations, but none would have him. *See id.* at 208–09. In effect, absent Mezei being "an amphibian," he was "incarcerated by a combination of forces which keep him as effectually as a prison, the dominant and proximate of these forces being the United States immigration authority." *Id.* at 220 (Jackson, J., dissenting).

admission would be prejudicial to the interests of the United States, the alien wife of a citizen who had served honorably in the armed forces of the United States during World War II?”). Hence, *Mezei*’s dicta, specifically dealing with a noncitizen posing a national security risk, does not control the exact issue before the Court today.

Second, other precedent establishes that noncitizens encompassed by the entry fiction do, in fact, possess due process protections outside of the black-letter wording of the INA. As early as 1896 in *Wong Wing*, the Supreme Court has noted that noncitizens could not be subject to “infamous punishment at hard labor, or by confiscating their property” without “a judicial trial to establish the guilt of the accused.” *Wong Wing v. United States*, 163 U.S. 228, 237 (1896). In the 1960s and 70s, the Ninth Circuit Court of Appeals established that noncitizens are entitled to *Miranda* warnings. *See Chavez-Martinez v. United States*, 407 F.2d 535, 539 (9th Cir. 1969); *United States v. Casimiro-Benitez*, 533 F.2d 1121, 1124 (9th Cir. 1976). In 2008, the Supreme Court substantiated “that the privilege of habeas corpus entitles” noncitizens—albeit in the context of noncitizen detainees designated as enemy combatants—“to a meaningful opportunity to demonstrate that he is being held pursuant to ‘the erroneous application or interpretation’ of relevant law.” *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting *Immigr. and Naturalization Serv. v. St. Cyr*, 533 U.S. 289, 302 (2001)). And, as of 2021, the Ninth Circuit, although overturning the district court’s preliminary injunction, did not contend that noncitizen detainees could not assert Fifth Amendment deliberate indifference or conditions of confinement claims. *Cf. Fraihat v. U.S. Immigr. & Customs Enf’t*, 16 F.4th 613, 647–50 (9th Cir. 2021).

As these decisions make clear, a noncitizen’s Fifth Amendment rights are not expressly limited to the text of the INA under the entry fiction doctrine. Rather, it is only those rights regarding ***admissions*** that are. Consequently, *Mezei* is inapplicable to the instant action.

This finding is in harmony with, not contrary to, the Supreme Court’s *Thuraissigiam* decision. In *Thuraissigiam*, the Court did not address a habeas petition challenging an

"unlawful executive detention" and seeking "simple release[.]" *Thuraissigiam*, 591 U.S. at 119 (quoting *Munaf v. Geren*, 553 U.S. 674, 693, 697 (2008)). Instead, the Court addressed a matter "far outside the core of habeas": a request to be provided with "a new opportunity to apply for asylum and other applicable forms of relief." *Id.* at 115, 119. In fact, the noncitizen's "petition made no mention of release from custody." *Id.* at 115. Because of this, the Court noted that the Thuraissigiam "d[id] not want simple release but, ultimately, the opportunity to remain lawfully in the United States." *Id.* at 119 (citation omitted). Hence, Thuraissigiam's petition sought more than just release—which, in fact, he did not seek. Rather, Thuraissigiam sought admission to the country.

It is through this context that the Court addressed Thuraissigiam's due process challenge. The Supreme Court, in applying the entry fiction doctrine and its prior decisions, including *Mezei* and *Knauff*, found that a noncitizen on the threshold "has only those rights regarding ***admission*** that Congress has provided by statute." *Id.* at 140 (emphasis added). With this in mind, the Court held that, as to Thuraissigiam's request for admission into the U.S., "Congress [had] provided the right to a determination whether he had a significant possibility of establishing eligibility for asylum, and he was given that right. . . . Because the Due Process Clause provides nothing more, it does not require review of that determination or how it was made." *Id.* (cleaned up). Thus, Thuraissigiam was provided with his rights as to ***admissions*** under the Due Process Clause, and was not constitutionally entitled to any more process in seeking ***admissions*** into the U.S.

This Court's interpretation of *Mezei*, *Thuraissigiam*, and the entry fiction doctrine are supported by numerous courts, both in this District and its sister districts. *See D.V.D. v. U.S. Dep't of Homeland Sec.*, 821 F. Supp. 3d 102 (D. Mass. 2026)[4]; *see also Padilla v.*

[4] While the Court acknowledges that *D.V.D.* is an out-of-circuit decision that is currently stayed by the First Circuit, undersigned is nonetheless persuaded by the analysis contained within *D.V.D.* Furthermore, the Court does not stand alone within this District in relying upon *D.V.D. See Khasanova v. Rokosky*, No. CV-26-00763-PHX-JCH (JFM), 2026 U.S. Dist. LEXIS 139896, at *8 (D. Ariz. June 24, 2026); *see also Zinaida v. Lyons*, No. CV-26-02866-PHX-RM (MTM), 2026 U.S. Dist. LEXIS 122386, at *4 (D. Ariz. June 3, 2026); *Salamakhin v. Noem*, No. CV-26-00330-PHX-AMM (MTM), 2026 U.S. Dist. LEXIS 103033, at *9 (D. Ariz. May 6, 2026); *Mozhubaev v. Rosa*, No. CV-26-00505-PHX-DJH, 2026 U.S. Dist. LEXIS 113646, at *4 (D. Ariz. May 22, 2026).

*U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163 (W.D. Wash. 2023).

For example, the district court in *D.V.D. v. U.S. Dep't of Homeland Sec.* recently illustrated why the entry fiction doctrine does not foreclose Petitioner's as-applied challenge to the length of their detention. In *D.V.D.*, the court noted that, although the entry fiction doctrine "provide[d] an exception to the otherwise geographic scope of the Due Process Clause," the doctrine only impacted those due process rights "regarding admission." *D.V.D.*, 821 F. Supp. 3d at 150 (cleaned up) (quoting *Thuraissigiam*, 591 U.S. at 140). The court proceeded to "distinguish rights regarding admission," which relates to the government's "sovereign authority to admit noncitizens only in cases as it may see fit," with other interests that might be implicated by the Due Process Clause. *Id.* at 151 (cleaned up). Because the *D.V.D.* petitioners neither challenged their orders of removal nor the process resulting in those orders, the government's sovereign prerogative was not implicated. *Id.* at 151 (citing *Johnson v. Guzman Chavez*, 594 U.S. 523, 536 (2021)). Hence, the entry fiction doctrine did not bar the petitioners' non-admissions due process challenges. *Id.* at 151–53.

In a truncated fashion, the district court in *Padilla* refuted the government's entry fiction argument. There, the court rejected the government's claim that the entry fiction doctrine broadly applied to any due process challenge, noting that such an assertion "is untethered to the claim in *Thuraissigiam* and the [Supreme] Court's reasoning." *Padilla*, 704 F. Supp. 3d at 1171. Rather, the entry fiction doctrine is constrained "only [to] those rights regarding admission that Congress has provided by statute." *Id.* at 1172 (emphasis omitted) (quoting *Thuraissigiam*, 591 U.S. at 140). Hence, where a petitioner "do[es] not challenge the admission process in any way or assert a right to remain in the United States," the entry fiction doctrine does not apply. *Padilla*, 704 F. Supp. 3d at 1172.

Finally, and most importantly, finding that a noncitizen possesses a cognizable liberty interest is consistent with Supreme Court's extensive catalog of decisions applying the Due Process Clause. The Supreme Court has noted that in American society, "liberty is the norm," which necessitates that civil detention "is the carefully limited exception."

*Foucha v. Louisiana*, 504 U.S. 71, 83 (1992) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)); *Addington v. Texas*, 441 U.S. 418, 425 (1979) ("This Court repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."); *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (noting that the petitioner's interest from confinement was "the most elemental of liberty interests—the interest in being free from physical detention by one's own government"); *Hagar v. Reclamation Dist. No. 108*, 111 U.S. 701, 708 (1884) ("Undoubtedly where life and liberty are involved, due process requires that there be a regular course of judicial proceedings, which imply that the party to be affected shall have notice and an opportunity to be heard[.]"), *superseded by statute*, 31 U.S.C. § 5103; *cf. Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) ("The Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review") (citing *Boumediene v. Bush*, 553 U.S. at 781–83, 786). This contention is no less valid when considering that Petitioner is not a citizen, *see Yick Wo v. Hopkins*, 118 U.S. 356, 368–69 (1886), because "[t]he Fifth Amendment, as well as the Fourteenth Amendment, protects every one of" the "millions of aliens within the jurisdiction of the United States." *Mathews v. Diaz*, 426 U.S. 67, 77 (1976); *Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings.") (citing *The Japanese Immigration Case*, 189 U.S. 86, 100–01 (1903)); *Wong Wing*, 163 U.S. at 238 ("[I]t must be concluded that all persons within the territory of the United States are entitled to the protection guaranteed by th[e Fifth and Sixth Amendments], and that even aliens shall not be . . . deprived of life, liberty, or property without due process of law.").

All told, Respondents' interpretation of the entry fiction doctrine would contravene the Supreme Court's precedent on the Due Process Clause of the Fifth Amendment. It would subordinate "the most elemental of liberty interests—the interest in being free from physical detention by one's own government," *Hamdi*, 542 U.S. at 529—to that of a

government official's discretion. It would, at its best, cast doubt over the Supreme Court's precedent applying the Due Process Clause to cases involving noncitizens. And, at its most invidious, it casts a doubt on a noncitizen's entitlement to any constitutional protection. *See Russian Volunteer Fleet v. United States*, 282 U.S. 481, 491–92 (1931) (applying Fifth Amendment Takings Clause protections to "alien friends"); *see also Wong Wing*, 163 U.S. at 238 (noting that the Fifth and Sixth Amendments apply to noncitizens); *Padilla v. Kentucky*, 559 U.S. 356, 373–74 (2010) (Sixth Amendment right to effective assistance of counsel in a criminal proceeding); *Truax v. Raich*, 239 U.S. 33, 41 (1915) (Fourteenth Amendment Equal Protection Clause); *Takahashi v. Fish & Game Comm'n*, 334 U.S. 410, 419–22 (1948) (noting that the refusal to provide a noncitizen a commercial fishing license violated the Fourteenth Amendment); *Plyler v. Doe*, 457 U.S. 202, 230 (1982) (striking down, pursuant to the Fourteenth Amendment Equal Protection Clause, a state law withholding funds for educating undocumented noncitizen children); *Yick Wo*, 118 U.S. at 374 (noting that an arbitrary ordinance regarding public laundries that, as applied, invidiously discriminated against noncitizen Chinese nationals, violated the Fourteenth Amendment); *Bridges v. Wixon*, 326 U.S. 135, 148 (1945) ("Freedom of speech and of press is accorded aliens residing in this country."); *Casimiro-Benitez*, 533 F.2d at 1124 (Fifth Amendment *Miranda* rights apply to noncitizens).

For the foregoing reasons, Petitioner possess a cognizable liberty interest from prolonged civil detention that is not precluded by the entry fiction doctrine.[5, 6]

**B. Proper Procedural Process**.

Because Petitioner has a liberty interest in his release, the Court must now determine what procedures are required. To do so, the Court applies the three-part *Mathews v.*

---

[5] "[T]his maxim is ever invariably observed, that no fiction shall extend to work an injury[.]" 3 WILLIAM BLACKSTONE, COMMENTARIES *43.

[6] "No one can claim, nor since the time of slavery has anyone to my knowledge successfully claimed, that persons held within the United States are totally without constitutional protection. Whatever the fiction, would the Constitution leave the Government free to starve, beat, or lash those held within our boundaries? If not, then, whatever the fiction, how can the Constitution authorize the Government to imprison arbitrarily those who, whatever we might pretend, are in reality right here in the United States? The answer is that the Constitution does not authorize arbitrary detention." *Jennings v. Rodriguez*, 583 U.S. 281, 332 (2018) (Breyer, J., dissenting).

*Eldridge* test. Under the *Mathews* test, the Court considers:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

As to the first factor, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha*, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); *Addington*, 441 U.S. at 425 ("This Court repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."); *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."); *Rodriguez v. Marin*, 909 F.3d 252, 256–57 (9th Cir. 2018) ("Arbitrary civil detention is not a feature of our American government. 'Liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.'") (cleaned up) (quoting *Salerno*, 481 U.S. at 755); *cf. Lopez*, 978 F.3d at 850 ("The Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review") (citing *Boumediene v. Bush*, 553 U.S. at 781–83, 786). This factor favors Petitioner.

Turning to the second factor, "[w]here an individual has not received a bond or redetermination hearing, the risk of an erroneous deprivation [of liberty] is high." *Aceros v. Kaiser*, No. 25-cv-06924-EMC (EMC), 2025 U.S. Dist. LEXIS 179594, at *33 (N.D. Cal. Sep. 12, 2025) (citation omitted). The Court finds that there is a significant risk of erroneous deprivation if previously paroled noncitizens may be re-detained without a neutral decisionmaker analyzing whether re-detention is warranted. Hence, this factor also favors Petitioner.

Finally, as to the third *Mathews* factor, "[i]f the government wishes to re-arrest [a petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). Further, detention hearings in immigration courts are commonplace and impose a "minimal cost." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal., 2025); *Abduraimov v. Andrews*, No. 1:25-CV-00843-EPG-HC, 2025 U.S. Dist. LEXIS 202711, at *21 (E.D. Cal. Oct. 14, 2025) ("Courts generally have found that the cost of providing a bond hearing is relatively minimal, and there is nothing in the record before this Court demonstrating that providing Petitioner with a bond hearing would be fiscally or administratively burdensome."); *cf. Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) (noting that "[t]he costs to the public of immigration detention are 'staggering': $158 each day per detainee, amounting to a total daily cost of $6.5 million. Supervised release programs cost much less by comparison: between 17 cents and 17 dollars each day per person"). In any event, "[d]etention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest. *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1036 (N.D. Cal. 2025).

The Court therefore finds that the *Mathews* factors weigh in favor of finding that Petitioner was entitled to a hearing before he was re-detained and placed in DHS custody. Therefore, the Court directs Respondents to immediately release Petitioner. *See Singh v. Unknown Party*, No. CV-26-00483-PHX-JCH (CDB), 2026 U.S. Dist. LEXIS 61597, at *9 (D. Ariz. Mar. 24, 2026) ("The Court finds that immediate release, rather than requiring another bond hearing, is the appropriate remedy.").

Accordingly,

**IT IS ORDERED** that Petition for a Writ of Habeas Corpus by a Person in Immigration Custody (doc. 1) is **GRANTED**.

**IT IS FURTHER ORDERED** that Respondents must **IMMEDIATELY RELEASE** Petitioner from custody under the same conditions that existed before his re-

detention.

**IT IS FURTHER ORDERED** that Respondents shall provide a Notice of Compliance within **THREE (3) BUSINESS DAYS** of Petitioner's release.

**IT IS FURTHER ORDERED** that any pending motions are denied as moot and the Clerk of Court shall enter judgment in Petitioner's favor and close this case.

Dated this 25th day of August, 2026.

Honorable John Z. Boyle
United States Magistrate Judge